IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE BLEDSOE, | ) | |
| | ) | Case No. 03 C 3890 |
| Plaintiff, | ) | |
| | ) | Judge Mark Filip |
| v. | ) | |
| | ) | |
| JOHN POTTER, Postmaster General, | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eugene Bledsoe ("Plaintiff" or "Bledsoe"), a United States postal worker, brings this action against John Potter, the Postmaster General of the United States Postal Service ("the Postal Service" or "Defendant"). Plaintiff, who is African-American, alleges that the Postal Service retaliated against him for his previous protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Specifically, Bledsoe alleges that as a result of EEOC complaints he filed against the Postal Service, his superiors denied him overtime opportunities by changing his scheduled work days. The Postal Service has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. As explained below, the Postal Service's motion is granted.

I.    Relevant Facts

A.    Lack of Compliance with Rule 56.1

The relevant facts are taken from the parties' filings under Local Rule 56.1 ("L.R. 56.1"). As is the practice in this district, the Court only considers those facts or additional facts that are presented in conformity with L.R. 56.1.

There are substantial issues in this case concerning compliance with Local Rule 56.1. By way of background, the Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance" with L.R. 56.1. *See Bordelon v. Chicago Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000); *accord Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809 (7th Cir. 2005). The Seventh Circuit and district courts have not been wedded to enforcement of the local rule as a matter of mere formalism. Rather, precedent acknowledges that it is a "reasonable judgment" that "consistent, 'bright-line' enforcement is essential"—not only in promoting compliance with the local rule, but also "to ensuring that [the] long-run aggregate benefits in efficiency" that L.R. 56.1 is intended to produce are realized for the system of justice in the Northern District of Illinois. *Kozola v. Bd. of Ed. of City of Chicago,* 385 F.3d 1104, 1109 (7th Cir. 2004) (collecting cases); *accord, e.g., Midwest Imports v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995). In addition, the process established in L.R. 56.1 (and its predecessor, L.R. 12(M) and (N)), helps focus and narrow the factual disputes so the court is not attempting to guess at what fairly can be argued and inferred from an often massive factual record; that dynamic helps to ensure that the summary judgment process best promotes fair results for all.

The Postal Service filed a statement of facts pursuant to L.R. 56.1(a)(3) in conjunction with its motion. ("Def S.F." (D.E. 16).) The procedural rules require Bledsoe to file not only a response to the Postal Service's statement of facts (*see* L.R. 56.1(a)), but also a separate statement of additional facts (*see* L.R. 56.1(b)), which must include citations to specific and appropriate record material in support of any factual assertions. *See, e.g., Midwest Imports*, 71 F.3d at 1317.

2

The Court previously issued a minute order in this case striking Bledsoe's response to the Postal Service's Rule 56.1 statement without prejudice, *inter alia*, for failure to provide an appropriately supported statement of additional facts, as required by L.R. 56.1(b)(3)(B). (D.E. 23.)[1] In the order, the Court explained that the affidavit and other exhibits filed by Bledsoe are not a substitute for a Rule 56.1 statement. (*Id.* (quoting *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("'We emphasize, however, that Rule 56.1(b)(3)(B) "provides the *only* acceptable means of . . . presenting additional facts."'") (quoting *Midwest Imports,* 71 F.3d at 1317) (emphasis in *Malec*)). Rather than filing a statement of additional facts with appropriate supporting citations, as instructed by L.R. 56.1 and the Court's previous order, Bledsoe provides

---

[1]     The order also struck without prejudice the Postal Service's motion for summary judgment and supporting materials, because the Postal Service's Rule 56.1 statement included some exhibits without proper evidentiary foundation. (D.E. 23.) (Given that both sides had failed to fully comply with Local Rule 56.1, in the Court's view the fairest course, and the course that appeared most sensible in terms of judicial economy and preservation of limited resources, was to give each side an opportunity to get things right.) The Postal Service subsequently filed authentication and foundation for the exhibits in connection with its renewed motion for summary judgment. (D.E. 26 and 27.) To the extent Bledsoe challenges the Postal Service's authentication of certain exhibits, the Court respectfully disagrees, at least in all material parts and except as specifically noted elsewhere. Initially, the Court notes that authentication "does not erect a particularly high hurdle" to admissibility. *United States v. Dhinsa*, 243 F.3d 635, 658-59 (2d Cir. 2001) (citing Fed. R. Evid. 901). Federal Rule of Evidence 901 provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). "The party offering the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Boim v. Quranic Literary Inst.*, 340 F. Supp. 2d 885, 915 (N.D. Ill. 2004) (citation omitted); *accord, e.g., Stringel v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 415, 420 (7th Cir. 1996). In the case *sub judice*, the Postal Service has provided affidavits verifying each of the exhibits in question. *Accord* 10A Charles Alan Wright et al., Federal Practice & Procedure § 2722, at 379-80 & 382-84 (1998). Not even Bledsoe claims that the exhibits are not what they are purported to be. Seventh Circuit precedent teaches that the opponent of the evidence bears the burden of showing that a genuine issue of authenticity exists. *See, e.g., Tyson v. Jones & Laughlin Steel Corp.*, 958 F.2d 756, 761 (7th Cir. 1992). Bledsoe has failed to make such a showing here.

four paragraphs of "Additional Facts," three of which have no supporting citations at all. (D.E. 28.) Equally if not more problematic, Bledsoe (who is represented) repeatedly and improperly includes additional facts within his responses to the Postal Service's factual statements, and he also improperly submits outside the L.R. 56.1(b) format a lengthy affidavit and several exhibits. Effectively none of this material is presented as required through the Rule 56.1(b) statement or any reasonable semblance thereof. *See, e.g., Midwest Imports*, 71 F.3d at 1317. It is therefore not properly considered.

As mentioned, with respect to the few paragraphs denominated as "Additional Facts," three of the four paragraphs fail to cite appropriate record support as required. (They, in fact, provide no citations whatsoever.) Precedent repeatedly teaches that the Court has no duty to scour the record searching for arguments or facts on behalf of a party. *See, e.g., Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002); *Malec*, 191 F.R.D. at 583 ("Factual allegations not properly supported by citation to the record are nullities."). Doing so would delay the adjudication of motions and cases involving litigants who have actually complied with well-settled local rules designed to facilitate reasonably prompt adjudication of cases for everyone. With respect to the one paragraph providing a record citation, the cited material does not support or verify the statement. (D.E. 28 ¶ 1.) For these reasons, the Court disregards Bledsoe's four paragraphs of "Additional Facts." The Court notes, however, that even if these facts were deemed admitted, summary judgment would still be warranted, as explained further below.

With respect to the inclusion of additional facts in response to the Postal Service's L.R. 56.1 statements, the Seventh Circuit has consistently affirmed that this practice is improper and

4

that statements contained in responses that go beyond what is necessary to justify a denial will not be considered. *See Cichon*, 401 F.3d at 809 (collecting cases); *Midwest Imports*, 71 F.3d at 1316-17. L.R. 56.1 was designed precisely to avoid this sort of procedural morass—both because the situation makes it difficult to identify the universe of actual, material, factual disputes; and also because the time required to decipher the improper filings creates undue burdens on limited judicial resources that delay the courts' efforts to render decisions for other litigants. *Accord Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003); *Bordelon*, 223 F.3d at 528-29 (affirming district court's decision to strike entire response to movant's statement of facts rather than searching for individual, proper statements; holding that "the purpose of [the predecessor rule of L.R. 56.1]—to require the parties to identify the disputed issues in a concise format—would be defeated if the court were required to wade through improper denials and legal argument in search of a genuinely disputed fact"); *Midwest Imports*, 71 F.3d at 1316-17. Thus, the Court disregards the additional statements of fact contained in the following paragraphs of Bledsoe's response to the Postal Service's Statement of Fact ("Pl. Resp." (D.E. 28)): ¶¶ 13, 14, 15, 38, and 52.

With respect to Bledsoe's affidavit, the Court already noted in its previous order that, while the affidavit and exhibits may be used by Bledsoe to support his denials or additional statements of fact when properly presented within the framework of L.R. 56.1, they are not a substitute for additional statements of fact, for responses to the government's factual statements, or for appropriate citation within those other documents. (D.E. 23.) Bledsoe's failure to properly bring virtually any facts before the Court is sufficient on its own for granting the Postal Service's motion, as Bledsoe has failed to adduce sufficient evidence to forestall summary judgment in

5

response to the government's materials. *See Malec,* 191 F.R.D. at 584 ("[T]he penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant."). For the reasons explained below, however, even if one were to ignore Bledsoe's procedural deficiencies, the Postal Service would still be entitled to summary judgment.[2] Before addressing these reasons, the Court addresses other infirmities in Bledsoe's response to the Postal Service's L.R. 56.1 statement.

First, Bledsoe has failed to respond to certain paragraphs of the Postal Service's Rule 56.1 statement. Specifically, Bledsoe has failed to respond to paragraphs 55, 56 and 74. These paragraphs are, therefore, deemed admitted. *See, e.g., Kozola,* 385 F.3d at 1108 ("'[A]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.'") (quoting Local Rule 56.1(b)(3)(B)).

Second, as with the four paragraphs of "Additional Facts," Bledsoe's responses to the following paragraphs of the Postal Service's Rule 56.1 statement fail to provide appropriate record support for their purported denials: ¶¶ 17, 20, 29-31, 35-36, 40, 42, 45-46, 48-50, 52, 57-58, 60, 67, 71, 73. For the reasons discussed above, the Court deems admitted those statements

---

[2]     The Court does not mean to imply that it is excusing Bledsoe's numerous procedural infractions. Bledsoe has counsel, and he was specifically advised that he needed to comply with the local rules and given a second chance to present appropriate filings. Precedent teaches that consistent enforcement of the local rules is appropriate to promote compliance with them and to ensure the benefits for the system of civil justice in this district that the local rules have long been designed to provide. Furthermore, as is typically the case, not enforcing the local rule would provide a dubious basis for trying to ascertain the truth; Bledsoe, for example, makes assertions within his "Additional Facts" that are not supported by evidentiary citations and thus cannot be readily verified or falsified, and he presents selected portions of larger documents without fulsome explanations. Nonetheless, even if one were to ignore the violations and to try to decipher the materials Bledsoe includes in improper format, it appears that (making the best sense of them that one can) his case would be subject to summary judgment for failure to present a similarly situated comparator and, independently, on pretext grounds, as explained below.

of fact of the Postal Service. *Accord, e.g,* L.R. 56.1(a), (b)(3)(B); *Malec,* 191 F.R.D. at 584

(failure to adhere to L.R. 56.1 requirements, including citation to specific evidentiary materials

justifying denial, is equivalent to admission).[3]

---

[3]        Certain of these responses also contain what appear to be evidentiary objections. Except as noted elsewhere, those evidentiary objections are not winning ones as to material factual issues. For example, Bledsoe objects to a properly supported factual assertion that the Evanston Post Office (where he was delivering mail, often in return for overtime pay) had the highest overtime rate of all the post offices in the Northern District of Illinois. (*See* Pl. Resp. ¶ 31 (stating: "Opinion. The assertions are not factually based.").) Bledsoe offers no reasonable basis to conclude that the Evanston Postmaster, who was charged with the task of reducing the substantial overtime expenditures there, would not have a basis to offer the sworn testimony that he did; in addition, whether one post office had high overtime percentages relative to others is not fairly characterized as an "opinion" that cannot be the subject of testimony in a court of law. Furthermore, and more fundamentally, in this employment law context, the salient issue (*e.g.,* as it relates to pretext analysis, one of the bases on which Bledsoe's case fails), is not whether the employer is correct as to whether it must reduce excessive overtime expenditures. Instead, the issue is whether there is a triable case presented as whether the proffered reason for an employment decision (*i.e.,* here, the need to reduce extraordinary overtime expenses in an effort to reduce Postal Service costs) was a lie. *See, e.g., Davis v. Con-Way Transp. Cent. Express, Inc.,* 368 F.3d 776, 785 (7th Cir. 2004) (teaching that "[t]he focus of the pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.") (quotation omitted).

        The Court also respectfully rejects Bledsoe's apparent contention that, for example, the Postmaster cannot testify that Bledsoe's overtime was among the more problematic brought to his attention, because overtime was being used routinely to accomplish a regular workload of the Postal Service. (Pl. Resp. ¶ 35). This statement cannot fairly be criticized as "opinion" (caselaw teaches that employer's are entitled to act on opinions—even ill-conceived or mistaken ones—so long as they are not pretexts for discrimination, *see, e.g., Davis,* 368 F.3d at 785), and the statement does not lack sufficient probative value so as to be inadmissible, as Bledsoe suggests. The Court also rejects Bledsoe's contention that the Postmaster cannot offer testimony that it was problematic that Bledsoe was regularly working an overtime day to accomplish a normal service for the Post Office because the Postmaster is not "an expert on route and time management" and "there is no determination of what constitutes a 'normal workload'" (Pl. Resp. ¶ 36). The Court also rejects Bledsoe's contention that evidence that a time study showed that Bledsoe was delivering mail in an overtime capacity that regular letter carriers could deliver more efficiently because they were already in the same area delivering mail cannot be considered because it displays "[f]alse reasoning again." (Pl. Resp. ¶ 42.) As to this latter objection, Bledsoe errs when he broadly asserts that "[i]t is for the jury to determine if this was a belief held by . . . [supervisors] or just part of the pre-text." (*Id.*) Cases are often dismissed on summary judgment because the non-movant has failed to show a triable case exists as to the pretext issue. Bledsoe

Finally, Bledsoe claims to lack sufficient information or knowledge with respect to the following paragraphs of the Postal Service's L.R. 56.1 statement: ¶¶ 21, 22, 25, 26, 27, 46, and 72. Responses such as "without sufficient information to admit or deny" are unacceptable at the summary judgment stage. *See, e.g., Williams v. Elvyea*, 163 F. Supp. 2d 992, 994 (N.D. Ill. 2001). A non-movant must establish a genuine issue of material fact to forestall summary judgment. A response that the non-movant does not have sufficient information cannot create a dispute, and thus the Court deems these statements of fact admitted. In addition, because any response other than admit or deny is improper, the Court deems the following responses an admission: Pl. Resp. ¶¶ 24, 31-35, 38, 39, 40, 45, 49, 66-68, and 71, 73. *Accord, e.g., Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001) ("Local Rule 56.1 . . . requires the non-moving party to admit or deny each factual statement proffered by the defendant and to designate with specificity and particularity those material facts believed to establish a genuine dispute for trial.").[4]

---

simply errs in asserting that the issue of pretext is to be treated differently than any of the other *McDonnell-Douglas* factors, and errs in his implication that the pretext issue must always be resolved by a jury irrespective of the record presented at summary judgment.

[4] To the extent Bledsoe offers evidentiary or other objections to the Postal Service's L.R. 56.1 statements, the Court has considered these objections and addresses them below. In particular, however, the Court respectfully rejects the hearsay objections to Def. SF ¶¶ 32-34. These statements, which reflect that the Postmaster was instructed to bring down excessive overtime expenditures at the Evanston facility, and that he was instructed that he would lose his job if he did not, are not hearsay and are not considered on such basis. More specifically, irrespective of whether the Postmaster's superiors actually were prepared to fire him if he did not successfully reduce overtime costs (and irrespective of whether they subjectively and actually wanted him to lower overtime expenses), the salient issue is that the Postmaster can competently relate that he was told that he must meet this goal of reducing excessive overtime expenses upon pain of losing his own job. Such evidence is properly considered when assessing whether the Postmaster and his consultant were lying when they stated that routes and days off were adjusted so as to reduce government spending and overtime costs.

B.    Facts

Eugene Bledsoe, an African-American man, began working for the Postal Service some thirty-five years ago at the Evanston, Illinois, Post Office.[5] (Pl. Resp. ¶ 1.) Bledsoe began his career as a Special Delivery Messenger. ( Def. SF ¶ 2.) The Special Delivery Messenger originally had its own bargaining unit, or "craft," but by 1997, the craft ceased to exist on its own and was merged with the Clerk craft. (*Id.* ¶¶ 4, 6.) Thus, after the merger, Bledsoe became a Special Delivery Messenger Clerk, which was part of the Clerk craft. (*Id.* ¶¶ 7, 8.) Part of Bledsoe's job responsibilities included delivery of Express Mail. (*Id.* ¶ 9.) The delivery of Express Mail is not limited to Special Delivery Messenger Clerks; it can be delivered by letter carriers or clerks. (*Id.* ¶ 11.) It is undisputed that prior to the acts described below, Bledsoe had filed at least one EEOC complaint, which is a protected activity. (*See id.* ¶¶ 70, 71, 73.)

In 1999, Martin Cain was assigned to the Evanston Post Office as the Customer Service Manager. (*Id.* ¶¶ 21, 23.) In April 2000, Michael Kobler became the Postmaster of that Post Office. (*Id.* ¶ 22.[6]) When Kobler came to the Post Office, it had very high relative use of

---

[5] Bledsoe averred in his complaint that he was hired as a postal employee at the Evanston post office in 1972. (Compl. ¶ 7.) He subsequently objected to the Postal Service's statement of that fact, and instead asserted that he was hired in 1967. (Pl. Resp. ¶ 1.) Plaintiff's exact start date is not material to the Court's decision.

[6] Bledsoe contends that the Kobler testimony from the EEOC hearing (upon which Def. SF ¶ 22, among others, is grounded) is inadmissible hearsay because "there is no basis to believe that if Kobler were called to testify today, he would testify . . . . [or] he could testify." (D.E. 28, Argument 1.) Bledsoe's contention is off the mark. First, at the summary judgment stage, the Court may consider evidence such as deposition testimony and similar prior under-oath testimony of a witness who was subject to cross-examination by the opposing party; in fact, if a litigant tries to forestall summary judgment by having the witness contradict such sworn testimony, such contradictions are in most instances properly disregarded. *See, e.g., Balderston v. Fairbanks Morse Engine Div.*, 328 F.3d 309, 318-19 (7th Cir. 2003) (citing, *inter alia, Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)). Second, if, as Bledsoe implicitly

overtime. (*Id.* ¶ 30.) In fact, it was the highest use in the entire Northern District of Illinois Postal Service area. (*Id.* ¶ 31.) Postmaster Kobler was told that he needed to bring the overtime down and turn it into regular time (*id.* ¶ 32); in this regard, Kobler was told that, to keep his job, he needed to reduce overtime costs by some 8-10% (*id.* ¶ 34).

One of Cain's responsibilities was to conduct time studies of employees. (*Id.* ¶ 24.) (These productivity studies appear to track how an individual employee spends each component of his or her workday.) In 1999, Cain conducted approximately 30 such studies, and in 2000, he conducted another 10 to 15 studies. (*Id.* ¶¶ 25, 26.) As many as 48 total time studies may have been conducted at the Evanston Post Office in 2000, according to Kobler. (*Id.* ¶ 26.) As a result of the time studies, 12 delivery routes were adjusted. (*Id.* ¶ 26.)

Before 2000, Bledsoe's regularly scheduled days off were Saturday and Sunday. (*Id.* ¶ 3.) From 1998 to 2000, he worked every day of the week, and he regularly collected overtime for the days he worked but was scheduled to be off. (*Id.* ¶ 10.) Because overtime was being used

---

contends, Mr. Kobler were unable to testify as a witness at a trial in this case—because, for example, he fell ill, or died, for some other reason—he would be an unavailable witness under Federal Rule of Evidence 804(a). As an unavailable witness, Mr. Kobler's former testimony at the EEOC hearing (at which Bledsoe was represented, at which he testified, and at which his counsel cross-examined witnesses such as Mr. Kobler (*see*, e.g., D.E. 17, Ex. 17 at 206-48)) would be admissible. Such testimony would be properly admitted under Fed. R. Evid. 804(b)(1) because it was made under oath, and Bledsoe had at the EEOC hearing a "similar motive to develop the testimony by . . . cross . . . examination." Fed. R. Evid. 804(b)(1). To the extent Bledsoe contends Mr. Kobler would not offer the same evidence at trial that he offered at the EEOC hearing, Bledsoe has failed to offer any evidence for that speculation. (D.E. 28, Argument 1.) Finally, to the extent that Bledsoe suggests that statements in the EEOC hearing transcript do not address claims that occurred after that hearing, events after that hearing are not material because Bledsoe's complaint and any evidence adduced in support of it concerns only the August 2000 change in days off, which was the subject of the EEOC hearing in question. In any event, Bledsoe could not properly raise new (and still undisclosed) acts of alleged retaliation to defeat a properly filed summary judgment motion concerning the pending complaint.

routinely to accomplish expected tasks, Bledsoe's schedule was one of several schedules that were brought to the attention of Kobler by his managers and staff. (*Id.* ¶ 35.) In June 2000, Cain conducted a time study, or route inspection, of Bledsoe's Monday deliveries. (*Id.* ¶ 38.) Cain looked to see how much mail was taken out and of which type and how long it took to do the job. (*Id.* ¶ 39.) The majority of Express Mail delivered by Bledsoe on that Monday consisted of "second attempts."[7] (*Id.* ¶ 40.) Based on the time study, Cain concluded that because second attempts do not have to be delivered by a particular time, the mail that Bledsoe delivered on Monday could have been delivered by the regular carriers on that route. (*Id.* ¶ 41.) Bledsoe appears to dispute that any efficiency is achieved by having a regular carrier deliver the second attempts he delivered on Monday because there is no carrier assigned to the Northwestern University campus. (Pl. Resp. ¶ 41.)

Kobler and Cain discussed the result of the time study. (Def. SF ¶ 46.) Cain had concluded that, at a minimum, Bledsoe's non-scheduled days should be changed to Sunday and Monday. (*Id.* ¶ 45.) Kobler decided to adjust the days off, as the suggestion was in line with Kobler's own experience and apparently also was consistent with the general policy of post offices with respect to Express Mail. (*Id.* ¶¶ 47-48.) In this regard, it is more efficient for the regular letter carriers to deliver the second-attempt Express Mail because they are going to be at the delivery location anyhow delivering regular mail. (*Id.* ¶ 49.[8]) Kobler notified both Bledsoe

---

[7] If Express Mail is not timely delivered or an attempted delivery is not timely made, the sender is entitled to a full refund. (*Id.* ¶ 19.) A second attempt must be made by the Postal Service some time the next day, but the mail does not have to be delivered by a particular time. (*Id.* ¶ 20.)

[8] Bledsoe objects to this statement because it is a "statement of opinion" and also because Kobler had only held the position of Postmaster in Evanston for a few weeks. (Pl. Resp.

and the union to ask for their input on the proposed change. (*Id.* ¶ 51.) After Kobler decided to

change Bledsoe's day off, he met with the union and decided to "repost" the position because the

duties had not changed, just the days off. (*Id.* ¶ 52.) In July 2000, after meeting with the union,

Kobler reposted the position of Special Delivery Messenger Clerk with Sundays and Mondays

off. (*Id.*) Bledsoe was told that anybody, including carriers, could deliver Express Mail on

Mondays, and that the post office did not need Bledsoe to deliver it (while, incidentally, regularly

receiving overtime pay because he was working on a scheduled day off.) (*Id.* ¶ 53.) Bledsoe bid

on the vacancy and was the successful bidder. (*Id.* ¶ 54.)[9]

After the change in non-scheduled days, Bledsoe's hours and duties stayed the same. (*Id.*

¶ 55.) In his own words, "The only thing they changed was the non-scheduled day." (*Id.*) After

the schedule change, however, Bledsoe rarely worked overtime. (*Id.* ¶ 59) After Bledsoe's

change in days off, he had an eight-hour per day workload from Tuesday through Saturday. (*Id.* ¶

56.) The Postal Service explains that the work that Bledsoe had done on Mondays was absorbed

---

¶ 49.) This objection is respectfully rejected: Kobler may have been a Postmaster for only a short
time, but he had been with the Postal Service long before that, and he certainly was in a position
to have views on this straightforward subject. *See, e.g.*, Def. SF ¶ 47 & Pl. Resp. ¶ 47 (admitting
that Cain's suggestions about the structuring of Bledsoe's schedule and handling of Express Mail
deliveries were "in line with Kobler's own experience"). More important, even if this only was a
subject of "opinion" in some sense of that term (many, if not most, management decisions
involve some degree of judgment or opinion) that does not mean that such a decision or view, if
honestly held, is unlawful under Title VII. *See, e.g., Davis v. Con-Way Transp. Cent. Express,
Inc.*, 368 F.3d 776, 785 (7th Cir. 2004).

[9] After Bledsoe's admission that he was the successful bidder, he improperly attempts to
add a further statement of fact that he was told by his supervisor, Lorrine Bonner, that if he did
not bid on the position, he would be classified as an unassigned regular. (Pl. Resp. ¶ 54; Pl. SJ
Aff. ¶ 14 (his supervisor told him that "he would loose [sic] his present job which was scheduled
to be abolished, and that he would be an unassigned regular in the Clerk craft with no specific
job").) This statement is not properly before the Court. *See* discussion, *supra*, concerning Rule
56.1 framework prescribed by local rules.

by carriers as part of their regular duties in their regular hours (*Id.* ¶ 57),[10] so there was a reduction in the number of overtime hours that needed to be worked by postal employees. The change in schedule did not result in increased overtime for regular letter carriers. (*Id.* ¶ 58.) It further appears that Kobler's efforts to reduce overtime expenses generally in Evanston were successful. (*Id.* ¶ 67.[11])

In September 2000, Bledsoe filed an EEOC Complaint of Discrimination in the Postal Service, alleging that he had been discriminated against based on his race, color, sex, age, and as retaliation for prior EEO activity, by having his schedule changed and by being denied overtime. (Def. SF ¶ 73 and Ex. 14.) After a hearing before an administrative law judge, Plaintiff's contentions were rejected. (Def. SF ¶ 74 and Ex. 16 at 4 (ALJ Winston J. Jackson Jr.'s

---

[10] Bledsoe attempts to deny this statement of fact with a citation to an unnumbered paragraph in his lengthy affidavit. This is improper. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("specific reference" to an affidavit means paragraph numbers); *accord, e.g.*, *Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). As a result, it will not be considered. Moreover, and independently, even if Bledsoe's assertion could be properly considered, it does not appear to contradict the Postal Service's basic point that Bledsoe's prior efforts were simply spread among the regular mail carriers making their routes. *Compare* Def. SF ¶ 57 ("Carriers absorbed what Bledsoe used to do on Mondays in their regular duties in their regular hours.") (internal quotation marks omitted) *with* Pl. Resp. ¶ 57 ("Deny. See Bledsoe affidavit. The carriers from other routes were assigned Bledsoe's duties and the costs associated with delivery of Express Mail was spread amongst the carriers in the mornings.").) The Court also notes that the Postal Service need not demonstrate that its efforts to reduce overtime expenses were successful (government efforts to reduce expenditures are legion, and not all are successful); instead, the issue is whether the Postal Service was lying when it said that it restructured Bledsoe's schedule, under which he was regularly receiving overtime to complete routine tasks, because the Postal Service actually was engaging in illegal and discriminatory activity. As explained further below, Bledsoe fails on this pretext issue, among others.

[11] The Court respectfully rejects the contention that whether one has "significantly reduced the amount of overtime worked" in Evanston is too much of a matter of opinion to be admitted. (Def. SF ¶ 67 & Pl. Resp. ¶ 67.)

conclusion that "I find Complainant failed to prove race, sex, age and/or retaliatory discrimination"); *id.* at 17-18 (finding that Bledsoe, who was represented, failed to show a *prima facie* case of discrimination and also failed as to pretext issue.) Bledsoe then filed a complaint in this Court alleging that the Postal Service, in retaliation for his engaging in previous protected activity under Title VII, denied him overtime opportunities by changing his non-scheduled days.[12] (Compl. ¶ 24.)

II.     Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue of material fact. *See Murphy v. ITT Educ. Servs., Inc.*, 176 F.3d 934, 936 (7th Cir. 1999) (citation omitted). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[12]     The Court notes that Plaintiff alleges in passing in his Complaint that he was also retaliated against by being terminated and "other punishments." (Compl. ¶ 29.) Bledsoe has offered no evidence of other potential adverse employment actions or any other alleged discrimination, and thus, as the government argues, any such claims are also subject to summary judgment.

III.   Analysis

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to retaliate against any employee for opposing an unlawful employment practice or who "made a charge, testified, assisted, or participated in any manner" in any enforcement proceeding. *See* 42 U.S.C. § 2000e-3(a). There are two ways that a plaintiff may establish a Title VII claim. First, he may offer direct evidence of discrimination, which is "evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (internal quotation omitted) (analysis of direct evidence of racial discrimination). Second, he may offer indirect evidence under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004) (setting out methods of proof for retaliation claim).

A.   Summary Judgment Is Warranted Because Bledsoe Fails to Establish A *Prima Facie* Case

1.   Bledsoe Does Not Present Direct Proof of Discrimination as to the Challenged Schedule Change and Overtime Issue

Bledsoe identifies no admission by the Postal Service of the sort that precedent identifies as typically required to constitute "direct" evidence such that he could proceed under the direct method of proving his Title VII claims. *See, e.g., Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003) (noting that "[d]irect evidence usually requires

15

an admission by the decision maker that his actions were based" on an illicit reason); *see also Rogers v. City of Chicago*, 320 F.3d 748, 753-54 (7th Cir. 2003) (discussing admissions, convincing-mosaic analogy, and the direct method of proof); *Castleman v. ACME Boot Co.*, 959 F.2d 1417, 1422 (7th Cir. 1992) (teaching that direct evidence will "rarely" be found).

Bledsoe apparently argues that "proof of a pattern of retaliation and discrimination in eight separate cases over a thirty year period" with respect to the Postal Service is sufficient "direct evidence" of discrimination and retaliation to survive summary judgment. (D.E. 28, Arg. 4.) The Court respectfully disagrees. As an initial matter, Bledsoe has not produced any competent evidence within the requisite framework set forth by the local rules in support of such a "pattern" contention. As a result, Bledsoe's argument fails on that basis alone.

In addition, even if the Court were to disregard this fundamental procedural defect—which it does not, *see, e.g., Kozola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004) (collecting cases)—Bledsoe's contention would nonetheless fail. First, as a matter of fact, it appears that some of the central pieces of the putative evidence that Bledsoe would offer in support of his "pattern" claim relate to *settlements* of various complaints (some from the 1970s), which settlements were reached "without prejudice to the position of either party." (D.E. 28, Pl. Ex. C (1979 letter settling EEO complaints "76-133, . . . 76-611 and all complaints containing the same allegations"; *accord id.*, Ex. G at 1, 4). Not only did those settlements not include any admission of liability by either side, they also expressly provided, for example, that they could "not be cited in any other EEO proceeding, or any other forum" thereafter, which agreement Bledsoe and his counsel appear to be violating in the proceeding here. (D.E. 28, Pl. Ex. C; *accord id.*, Ex. G at 1). Because these settlement documents are not

16

admissions or findings of liability in any way, they are not competent evidence (even putting aside the Rule 56.1 failings, as well as the fact Bledsoe violated his express agreement not to cite them) of any pattern of misconduct.

To be entirely thorough, some of the putative documents appear to reflect that Bledsoe received some payments in response to some of his complaints (*see, e.g., id.*, Ex. A (stipulation reflecting Bledsoe's agreement to withdraw an allegation of reprisal discrimination dated April 6, 1979, and his receipt of $1,400 as part of the stipulation); *id.*, Ex. B (1975 Postal Service Employee and Labor Relations Group finding that Bledsoe was improperly denied certain Special Delivery Messenger assignments); *id.*, Ex. D (1980 Postal Service letter crediting certain allegations of improper treatment and rejecting other allegations, such that Bledsoe was entitled to "56 hours of overtime pay to equalize your overtime"). It is difficult to tell in some instances what the materials actually reflect, as they are presented in scattershot form without sufficient contextual information to ascertain exactly what they mean and whether they were final agency actions as opposed to pieces of broader review. (As noted above, the first exhibit, Ex. A, appears to be a settlement resolving a complaint, with Bledsoe agreeing to withdraw his allegation). In addition, all of the documents cited above relate to incidents from a generation ago.

Even if one were to ignore that none of the putative evidence is properly before the Court, and even if one were to wade into the materials and speculate about what they mean, there are only two documents that: (1) are not denominated as settlements which on their face state that they should be cited in any other proceedings; and (2) appear to relate to events later than 1980. One, a 2001 Merit Systems Protection Board document, reflects that the Postal Service agreed to rescind a proposed removal of Bledsoe dated November 2000. The action appears to be in the

17

nature of a settlement, as it was taken under the express terms that it "is not an admission by the Agency to any wrongdoing by the USPS or its Agents." (*Id.*, Ex. F.) The second is a September 2002 EEOC refusal to hear an untimely appeal by the Postal Service after the ALJ apparently found that Bledsoe improperly was placed in an off-duty status for conduct unbecoming a postal employee, in retaliation for prior EEO complaints and because Bledsoe is black. (*Id.*, Ex. H). Bledsoe fails to make clear the context of this incident; however, it is clear, after a review of the entirety of his materials, that Bledsoe's putative evidence of a "pattern" of thirty years' worth of continual discrimination is not what he claims it to be. There are a series of incidents from a generation ago—many of which involve settlements in which neither Bledsoe nor the Postal Service admitted wrongdoing, and in which both sides agreed not to cite the settlements in future proceedings. There also are three documents from after 2000, one of which (Ex. G) expressly is denominated as a settlement and includes a provision that it will not be cited as it has been here. (*Id.*, Ex. G at 1.) A second document (*id.*, Ex. F) appears to be in the nature of a settlement, and at a minimum it reflects a non-admission clause for the Postal Service to the Merit Systems Protection Board. The third document reflects an adverse finding against the Postal Service by an ALJ, which finding was not even reviewed on appeal by the EEOC because of a procedural default (*id.*, Ex. H). Although the incident reflected in this latter document may have been a problematic and/or unlawful one (the Court need not decide), Bledsoe offers no authority in support of the idea that the ALJ's finding in that different case is direct proof of discrimination here—particularly given that the ALJ *in this case* found that Bledsoe's claim failed on multiple, independent grounds, a finding that was affirmed on appeal. (Def. SF ¶ 74; *Bledsoe v. Potter*,

18

2003 WL 1203648 (E.E.O.C.) (Mar. 4, 2003) (EEOC Appeal No. 01A30549).) Simply put, this is not a thirty year continuous "pattern or practice" case, as Bledsoe would suggest.

Furthermore, as a legal matter, the Court notes that Bledsoe offers no authority for the proposition that a prior finding of discrimination in another case in itself absolves the plaintiff from showing a triable case of discrimination in the case *sub judice*. Regrettably, there are entire institutions of government and private industry that have, at one time or another, been found to have engaged in discrimination (sometimes on a systematic and long term basis) against one or more groups in their workforces. Bledsoe offers no authority to suggest that thereafter, a plaintiff like him is entitled to a trial, or is entitled to be otherwise absolved of normal proof requirements at the summary judgment stage, whenever Bledsoe or a plaintiff within the affected workforce would object to an employment practice or a schedule change.

Although the Court is not saying that prior acts of discrimination never could be relevant, it is clear in this case that Bledsoe has failed to offer direct evidence of discrimination as to the adjusted schedule/overtime issue. In this regard, the Court notes that the record establishes that the Evanston Post Office was using a disproportionate amount of overtime relative to its peers, and further that the Postal Service made it a priority to reduce these extraordinary expenses. (Def. SF ¶¶ 30-32, 34.) Bledsoe was being paid overtime on a routine basis to accomplish regular tasks, and that raised concerns. (*Id.* ¶¶ 35-36.) His overtime-based tasks thereafter were reassigned with the goal—which appears to have been successfully achieved, although that is not required under the law—of reducing the expenditure of U.S. Postal Service funds on unnecessary overtime. (*E.g., id.* ¶¶ 42, 46-48, 57-58.) Whatever problems and/or settlements Bledsoe may have had in other instances and cases, the limited evidence from those other cases (most of which

19

were settlements and/or occurred many years ago) does not present a triable case of discrimination under the direct method of proof as to this case here.[13]

      2.    Bledsoe Also Fails to Establish A *Prima Facie* Case Under The Indirect Method

Bledsoe also has failed to establish a triable issue under the indirect method of proof outlined in *McDonnell Douglas*, as adapted to retaliation claims in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640 (7th Cir. 2002). *Stone* court held that under the indirect method, a plaintiff must show that: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; (3) he was performing his job in a satisfactory manner; and (4) he was treated less favorably than any other similarly situated employee who did not engage in such protected activity. *Stone*, 281 F.3d at 644. If the plaintiff establishes a *prima facie* case of retaliation in this manner, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* If that evidence is unrebutted by the defendant or if he fails to raise a triable issue as to whether the offered reasons are pretextual, the defendant is entitled to summary judgment. *Id.*

---

[13]    In this regard, the Court notes that the break in time between the EEO complaints and the change in scheduled work days—a period of at least six months, as measured from the date of the last EEOC charge listed in the Complaint and the date the new job posted—also militates against any finding that Bledsoe can make out a *prima facie* case of retaliation, especially under any direct method of proof, because the substantial break in time between any of the complaints and the allegedly offending conduct fails to establish a reasonable inference of retaliation. *See, e.g., Haywood v. Lucent Technologies*, 323 F.3d 524, 532 (7th Cir. 2003) (one-year gap between plaintiff's termination and her complaint of race discrimination "far too long" to allow a reasonable jury "to infer that her termination was causally related to the filing of her complaint"); *Filopovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four-month gap negates causal inference); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (no inference where plaintiff's termination occurred more than five months after protected expression).

The Postal Service argues that Bledsoe cannot establish a *prima facie* case because he has no evidence (a) that he suffered an adverse job action, or (b) that he was treated differently from similarly situated individuals. Although the Court need not resolve the government's first contention (it is colorable but the issue is a close one), the government's second contention is correct and supports a grant of summary judgment.

It is a close question whether Bledsoe can be said to have suffered an adverse employment action on the facts of this case. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision constituting a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Traylor v. Brown*, 295 F.3d 783, 788 (2002) (summarizing the "adverse employment action" requirement). While an adverse employment action is defined quite broadly, not everything that makes an employee unhappy suffices. *See Traylor*, 295 F.3d at 788; *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Bledsoe must show that "material harm has resulted from . . . the challenged actions." *Traylor*, 795 F.3d at 788 (citing *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 692 (7th Cir.2001)). "Title VII was simply never intended to be used as a vehicle for an employee to complain about the hours she is scheduled to work or the effect those hours have upon the time an employee spends with family members." *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001).

The government strenuously argues that the mere change in Bledsoe's schedule does not constitute an adverse job change for purposes of establishing a *prima facie* case. (D.E. 15 at 8 (citing Def. SF ¶ 55 (Bledsoe's admission that "[t]he only thing that they changed was the non-

scheduled day. The hours stayed the same, the duties stayed the same")). ) The Court agrees that

a change in schedule, without more, does not constitute an adverse action under applicable

precedent. *See, e.g., Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644,

654 (7th Cir. 2001). Bledsoe's claim, however, that he "was denied overtime could plausibly

satisfy the adverse employment element of h[is] *prima facie* case, because the denial of overtime

would affect overall pay, even if it would not affect h[is] salary." *Market v. Ill. Bell Tel. Co.*, No.

01 C 3841, 2003 WL 22697284 at *8 (N.D. Ill. Nov. 13, 2003); *but see Cisneros v. City of

Chicago*, No. 00 C 8059, 2002 WL 31356404, *6 (N.D. Ill. Oct. 17, 2002) (finding that the

denial of overtime was not an adverse employment action because the plaintiff received a

substantial amount of overtime, and she was not entitled to work overtime every time she

requested it); *see also Tyler v. Ispat Inland, Inc.*, 245 F.3d 969, 972 (7th Cir. 2001) ("Even the

denial of a monetary perk, such as a bonus or reimbursement of certain expenses, does not

constitute an adverse employment action if it is wholly within the employer's discretion to grant

or deny and is not a component of the employee's salary.") (citations omitted); *Williams v.

Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (suggesting that a minor effect on

non-base pay income would not amount to an adverse employment action, especially where the

diminution in income was not effected as a result of a demotion). In this regard, Bledsoe offers a

procedurally improper contention that he lost money as a result of the change in his schedule,

which contention is not properly before the Court and is disregarded. (*See* Pl. Additional Facts ¶

45.) Nonetheless, it is undisputed and properly before the Court that Bledsoe used to receive

overtime pay every week—that was part and parcel of the excessive overtime problem at

Evanston, according to the Postal Service—and also properly before the Court that Bledsoe

22

(apparently along with many of his colleagues) received substantially less overtime after various schedule adjustments were put in place. (Def. SF ¶¶ 35, 57-59.) Bledsoe has no *right* to overtime—particularly via an arrangement that facially suggests sub-optimal management of Postal Services resources—but the Court will give him the benefit of the doubt and assume *arguendo* that his loss of the ability to routinely draw overtime pay (albeit perhaps through mismanagement of schedules) constitutes an adverse job action.

Even making that assumption, summary judgment is nonetheless appropriate because Bledsoe fails to establish a *prima facie* case. More specifically, the Postal Service correctly points out that Bledsoe's admits that he was not treated less favorably that any similarly situated employee who did not engage in the protected activity. (D.E. 15 at 7 (citing Def. SF ¶ 55 (Bledsoe's affirmative interrogatory response)).) Precedent teaches that this is fatal to Bledsoe's case. *See, e.g., Durkin v. City of Chicago*, 341 F.3d 606, 613 (7th Cir. 2003).[14] Viewing the facts in the light most favorable to Bledsoe, and given Bledsoe's admission, he has failed to identify a suitable similarly situated employee, and he accordingly fails to establish a *prima facie* case of retaliation under the indirect method. *See, e.g., id.; Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 864 (7th Cir. 1997); *Stern v. Cintas Corp.*, 319 F. Supp. 2d 841, 863 (N.D. Ill. 2004) (Pallmeyer, J.). On this basis, summary judgment is warranted in favor of the Postal Service.

---

[14]     A "similarly situated" individual is one who is "directly comparable to [the plaintiff] in all material respects." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531-32 (7th Cir. 2003) (citation omitted). To determine whether Bledsoe and another employee are directly comparable, the court must look at all relevant factors. *See id.* (listing typical factors to assess similarly situated comparator issue).

B.    Summary Judgment Is Warranted For the Independent Reason That Bledsoe Has
Failed to Create A Triable Issue Concerning Pretext

Even if the Court were to find that Bledsoe had made out a *prima facie* case, which he

has not, summary judgment would nonetheless be warranted for the independent reason that

Bledsoe has failed to adduce evidence to create a triable issue concerning pretext. The Postal

Service has produced evidence of non-discriminatory reasons for changing Bledsoe's non-

scheduled days from Saturday and Sunday to Sunday and Monday. (*E.g.*, Def. SF ¶¶ 32, 35-36,

42, 47, 55.) Evanston's use of overtime was out of the norm, and Postmaster Kobler was

instructed to reduce overtime at the post office there. (*Id.* ¶¶ 30-32, 34.) Bledsoe's schedule was

one of several schedules brought to the attention of Mr. Kobler by his managers and staff with

respect to overtime. (*Id.* ¶ 35.) The Postmaster accepted a recommendation that, because

Bledsoe was delivering mail the regular carriers could deliver more efficiently in any event, it

was unnecessary to routinely pay Bledsoe additional overtime to address the tasks. (*Id.* ¶¶ 42, 46-

48, 56-58.).) (Incidentally, Bledsoe's Monday hours were in fact absorbed by the regular letter

carriers, without the need for increased overtime for such carriers. (*Id.* ¶¶ 57, 58.))

Bledsoe has failed to cast meaningful doubt on the Postal Service's non-pretextual reason

for its decision to change Bledsoe's days off from Saturday and Sunday to Sunday and Monday.

*See Hudson*, 375 F.3d at 562. The Seventh Circuit instructs that this Court does "not sit as a

superpersonnel department" that reexamine s the propriety, correctness, or wisdom of any

otherwise lawful personnel decision. *Davis*, 368 F.3d at 785 (citation omitted). Under Title VII,

"the focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it

was accurate, wise, or well-considered." *Id.* at 784 (internal quotation and citation omitted). The

24

Seventh Circuit also has instructed repeatedly that arguing about whether a company was correct or not concerning an honestly held basis for an employment decision is "a distraction." *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 900 (7th Cir. 1999); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997); *see also Davis*, 368 F.3d at 784 ("[A] pretext for discrimination . . . means something worse than a business error; pretext means deceit to cover one's tracks." (internal quotations and citations omitted)); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ( "[Pretext] means a dishonest explanation, a lie rather than an oddity or an error."). Bledsoe presents no evidence of retaliatory or discriminatory animus, nor any evidence that would tend to disprove that the Postal Service was motivated by a desire to cut unnecessary and excessive government expenditures. Reducing such excessive expenditures is obviously a legitimate goal, and Bledsoe has failed to cast any meaningful doubt that an attempt to cut such expenditures (successfully, by the way, it appears) was what was going on. The Court thus finds that Bledsoe has failed to present evidence sufficient to create a genuine question of material fact as to whether the Postal Service's facially legitimate reason was

pretextual.[15]  Summary judgment is independently warranted on such basis, even assuming a

*prima facie* case had been shown.

IV.    Conclusion

Bledsoe has not pointed to any facts raising a genuine material issue that would defeat the

Postal Service's motion for summary judgment.  For the reasons set forth above, the Postal

Service's motion for summary judgment is granted.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 9-7-05

---

[15]     Although the Complaint is limited on its face to a claim of retaliation, Bledsoe maintained in the March 19, 2004 Status Report filed with the Court that he also alleged a claim of a race discrimination under Title VII. (D.E. 10.)  Even if Bledsoe had properly alleged discrimination under Title VII, such a claim fails for the same reasons that his retaliation claim fails, including that Bledsoe has identified no comparator who was treated more favorably and also, independently, that Bledsoe has offered no evidence sufficient to create a triable issue concerning pretext.  *See, e.g., Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 863-64 (7th Cir. 1997).  Bledsoe also referenced 42 U.S.C. § 1981 in the Status Report; however, "it is well established that Title VII is the exclusive remedy for federal claimants," like Bledsoe, "alleging discrimination in the workplace" with respect to federal employment.  *Davis v. Potter*, 301 F. Supp. 2d 850, 853 (N.D. Ill. 2004) (citing *Brown v. Gen'l Serv. Admin.*, 425 U.S. 820, 835 (1976)).

26